UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
CONMED CORPORATION,

                    Plaintiff,

vs.                                    13-CV-1226

IOAN COSMESCU AND I.C. MEDICAL, INC.,

                    Defendants.
-------------------------------------------x

                *Motion Argument* – March 10, 2015

        James Hanley Federal Building, Syracuse, New York

                HONORABLE GLENN T. SUDDABY

        United States District Judge, Presiding

                A P P E A R A N C E S

For Plaintiff:       BOND, SCHOENECK LAW FIRM
                     Attorneys at Law
                     One Lincoln Center
                     Syracuse, New York 13202
                       BY:  DAVID L. NOCILLY, ESQ.

                     CONMED CORPORATION
                     525 French Road
                     Utica, New York 13502
                       BY:  DANIEL S. JONAS, ESQ.
                            SARAH OLIKER, ESQ.

For Defendants:      ROBERT E. PURCELL
                     Attorney at Law
                     211 West Jefferson Street
                     Syracuse, New York 13202


                *Eileen McDonough, RPR, CRR*
            *Official United States Court Reporter*
                    *P.O. Box 7367*
                *Syracuse, New York 13261*
                    *(315)234-8546*

1          THE CLERK:  Case 6:13-cv-1226; ConMed Corporation

2     versus Ioan Cosmescu, et al.  Counsel, please note your

3     appearance for the record.

4          MR. NOCILLY:  David Nocilly, counsel for ConMed

5     Corporation, and Daniel Jonas, Vice President of Legal

6     Affairs, General Counsel, as well as Sarah Oliker, Assistant

7     General Counsel.

8          THE COURT:  Who is going to be arguing this

9     morning?

10          MR. NOCILLY:  I will be, Your Honor.

11          THE COURT:  Okay.  And wherever you're comfortable.

12     You can stay there, you can put that microphone up so you

13     don't have to bend over, or you can come up to the podium

14     when you're ready.

15          MR. NOCILLY:  Okay.

16          MR. PURCELL:  Robert Purcell appearing on behalf of

17     the defendants Ioan Cosmescu and I.C. Medical, Inc., Your

18     Honor.

19          THE COURT:  Good morning.  Same to you, as long as

20     you're comfortable, as long as I can hear you, that's what

21     I'm interested in.

22          As far as the oral argument goes, I'll hear your

23     arguments, but as part of those arguments there is some

24     questions, and I think the fair way to do it is I'm going to

25     give you some things that I want to hear about right now.

1    And I'll try and go slowly so you can jot some notes down.

2    And probably is not going to be any surprise, things that you

3    wouldn't anticipate addressing, I'm sure.  All right.

4             And this question would be for both parties.  Was

5    the GoldVac product sold before September of 2014 the same as

6    the GoldVac product sold on June 7, 2010?  I would like to

7    hear your positions with regard to that.

8             Now these two questions are primarily for

9    defendants.  On page 5 of the reply argument you argue that

10   the 2010 settlement agreement was the antithesis of

11   transacting business in New York because the covenant not to

12   sue contained therein was merely an agreement that defendants

13   would not do business in New York.  Where does it say in the

14   settlement agreement that you would not do business in

15   New York?  I would like you to address that.

16            Second question for defendants.  On page 7 of your

17   reply memo you argue the extrinsic evidence made and

18   considered in determining the intent of the settlement

19   agreement.  But isn't it such resort to intent and extrinsic

20   evidence appropriate only in the event of vagueness or

21   ambiguity?  And where is such vagueness or ambiguity in the

22   2010 settlement agreement?

23            Now, for plaintiff, two questions.  Setting aside

24   the impact of the Federal Circuit's ruling in *General*

25   *Protecht v. Leviton*, can it be said as a matter of patent law

1    that the defendants owned the '109 patent on June 7, 2010

2    when that patent had not yet been issued, although it had

3    been filed?

4            Next question.  How does the fact that the

5    defendants' promise not to sue on the '812 patent or its

6    derivative relatives like '109 form the basis of either, one,

7    plaintiff's claim for declaratory judgment of

8    non-infringement of the '109 patent, or its claim for

9    declaratory judgment of invalidity of the '109 patent?

10           And there will be a follow-up question depending on

11   your response.  Does plaintiff intend to move for leave to

12   file a second amended complaint in order to assert a claim

13   more expressly related to the 2010 settlement agreement?

14   Okay?

15           And again, I don't imagine that those are much of a

16   surprise, but those are things that I would like to hear you

17   address and anything else that you feel is appropriate that

18   you need to address or explain to the Court.  Counsel, when

19   you're ready.

20           MR. PURCELL:  Thank you, Your Honor.  May it please

21   the Court.  Let's first examine the jurisdictional arguments

22   in the complaint and the amended complaint insofar as

23   personal jurisdiction is concerned.  The sole argument is

24   personal jurisdiction is proper in this district by virtue of

25   the defendants' threats of infringement made against ConMed.

1    Upon information and belief, the defendants expected or

2    should have reasonably expected its acts to have consequences

3    in this district and defendants' derived substantial revenue

4    from interstate or international commerce.

5              It's clear that this argument pertains only to the

6    notice of infringement letters, copies of which were attached

7    to the various pleadings of the plaintiff.  There is no

8    argument in the complaint or the amended complaint to the

9    fact that the jurisdiction, that is personal jurisdiction, is

10   established in any other way than what is recited as I just

11   quoted.

12             When we examine the evidence of the counts and

13   causes of action in the complaint, their basic counts and

14   causes of action for non-infringement and the allegations are

15   essentially upon information and belief the accused products

16   do not contain each and every element of any one claim of the

17   patent, or the patents are invalid under Sections 102, 103

18   and/or 112 of the patent statutes.  102 is for novelty, 103

19   is for obviousness, 112 is for things like vagueness and like

20   that.

21             None of these arguments relate to an allegation

22   that the defendants are estoped to a certain infringement

23   due to the covenant, that there is implied license due to the

24   covenant, or that they're immune from suit because of the

25   covenant.  Nothing within the four corners of the complaint

1   or the amended complaint mentions anything about the covenant

2   either for a jurisdictional basis, personal jurisdiction, or

3   as a basis for the claims in the declaratory judgment

4   complaint and amended complaint.

5        Defendants filed a motion to dismiss for lack of

6   personal jurisdiction based upon long established Federal

7   Circuit law that says that simply sending notice of

8   infringement or cease and desist letters into a forum cannot

9   support personal jurisdiction in that forum over the sender

10  of those letters.  When that motion to dismiss was filed,

11  plaintiff awoke to the fact that, oh, yeah, oh, gosh, we've

12  got a problem here.  So what did the plaintiff do?  The

13  plaintiff then moved to seek permission and leave to take

14  jurisdictional discovery, which was granted.  Plaintiff

15  fished around for any number of facts that might support

16  other types of jurisdiction beyond the notice of infringement

17  letters.  They found nothing.

18       Plaintiffs filed an opposition to the motion to

19  dismiss and they rely upon not a single other contact of the

20  defendants.  There is no products being sold, no

21  distributors, no employees, no agents, no visits, no

22  advertising, no real state, no facilities.  Basically nothing

23  that they had beyond what they recited as the notice of

24  infringement letters.

25       I think also it's noteworthy that in the opposition

1    plaintiff did not present any basis for establishing personal

2    jurisdiction over the individual defendant Ioan Cosmescu.

3    All of the support for any jurisdiction allegations were

4    directed to the corporation I.C. Medical, Inc.

5           Realizing then it was skating on thin ice from the

6    personal jurisdiction standpoint, plaintiff then relies upon

7    this covenant not to sue that it already knew about before

8    filing the instant action and contends that, well, this

9    really does establish jurisdiction because this covenant is a

10   business transaction and the cause of action in this action

11   arises from that covenant.

12          Plaintiff's arguments are improper for several

13   reasons.  First of all, New York State law and statutes upon

14   which plaintiff is relying doesn't just say, oh, they engaged

15   in a business transaction.  No, no, no.  The careful wording

16   of that statute concerns a non-domiciliary who transacts any

17   business within the state.  Doesn't say engaged in a business

18   transaction with some company that might be based in the

19   state or might affect some company based in the state.  It

20   says who transacts any business in the state.

21          This covenant does not amount to any transaction of

22   business within the state.  The covenant was negotiated as

23   part of the settlement with the Arizona lawsuit.  It was

24   negotiated in Arizona, in a mediation in Arizona.  It was

25   signed in Arizona.  There was nothing for the defendants to

1    do in New York State in connection with that covenant.

2    Basically had minimal effects in New York State and certainly

3    did not constitute any transaction of business in the state.

4         Moreover, I think it's improper for the plaintiff

5    to even characterize the covenant as a business transaction.

6    It's simply a resolution of a business dispute.  And these

7    legal dispute resolutions do not automatically give rise to

8    being defined as business transactions simply because they

9    may involve parties who are engaged in business.

10        Next, the declaratory judgment complaint and the

11   complaint do not arise out of the covenant.  As I previously

12   mentioned, the arguments in the complaint and amended

13   complaint do not mention in any way, shape or form the

14   covenant or any alleged rights or immunity under that

15   covenant.  They're void of those allegations.

16        Secondly, as we mentioned in our reply papers,

17   there is clear, unambiguous, unrefuted testimony of attorney

18   Laura Zeman-Mullen, who was at the mediation, who did

19   negotiate the covenant to the effect that the plaintiff here

20   was well aware before the mediation and during the mediation

21   of the existence of continuation applications from the

22   patents involved in that lawsuit which might later issue

23   patents and which might cover the product at issue in that

24   lawsuit and perhaps other products too.  That was the reason

25   that there is this notice provision in there to the effect

1   that, well, if there is a patent that arises later and we

2   think it covers your product, we will tell you about it and

3   we will try to work things out, we will try to see your

4   contentions of any non-infringement, we will evaluate that

5   and we're not going to just rush off to file suit, have this

6   sort of exchange period.

7          And lastly, Your Honor, we think that from a

8   fundamental fairness standpoint there are several factors

9   that should be considered by the Court.  One is the size of

10  the parties.  ConMed is a major company.  I think it's

11  anywhere about $800 million.  I'm not sure about that exact

12  figure but it's a very large company.  The defendants here

13  are a roughly very small company.  They have no contacts with

14  New York State other than, you know, allegedly the covenant

15  not to sue and the cease and desist letters.  Arizona is

16  thousands of miles away.  It's not like we're asking people

17  coming from Pennsylvania or Massachusetts to come to trial

18  here, so we're talking about a major event in having

19  litigation being conducted here.

20         Also, if plaintiff arguably could escape this

21  hearing and at least have this Court rule that there has been

22  a prima facie showing of personal jurisdiction, the question

23  of whether we're just delaying the inevitable, whether once

24  we actually take depositions regarding the covenant and so

25  forth, and things arise and there is a final decision that

1    there is no personal jurisdiction way down the line or an

2    appellate court decides things were wrongly decided, we will

3    just have all wasted a lot of energy and effort in connection

4    with this lawsuit here in Syracuse.

5          There is another appropriate forum.  The defendant

6    I.C. Medical, Inc. has filed a patent infringement lawsuit on

7    these patents in the Arizona federal court.  That action is

8    being stayed pending the outcome of this Court's decision on

9    the instant motion to dismiss.  ConMed certainly has that

10   venue.  The parties can fight it out there.  It's perfectly

11   appropriate, there is no jurisdictional dispute over ConMed

12   in Arizona.  It's a huge company.  So there is that forum.

13   It's not ConMed is without a remedy if this Court should

14   grant the motion to dismiss at a minimum on the basis of

15   fundamental fairness.

16         Getting to Your Honor's questions.  With regard to

17   the GoldVac product at issue, it is my personal understanding

18   that the product has remained the same from the time of the

19   covenant not to sue to the present, but I defer to the

20   plaintiff's more accurate representation to the Court in that

21   regard.

22         Next you say that on page 5 of the reply brief we

23   contend that the covenant not to sue was actually some sort

24   of agreement not to do business in New York.  If we phrased

25   it that way, Your Honor, I apologize.  I think that's simply

1   too strong language.  It was of buying peace.  It was

2   basically saying we're not going to war.  There is nothing in

3   the agreement which basically said we're going to do business

4   in New York, that there is ongoing business relationship with

5   ConMed in New York, anything to that effect.  And if we said

6   something to the fact that it was an agreement not to do

7   business here, I think that's too strong, I apologize.

8           Next you say on page 7 of the reply brief we

9   introduce this extrinsic evidence of the Laura Zeman-Mullen

10  affidavit and why should extrinsic evidence be considered.

11  First, is the covenant vague and/or ambiguous in some way and

12  does that clarify the vagueness and ambiguity.  I think the

13  covenant is very succinct.  It's the product of mediation,

14  usually mediation context, not something signed today and put

15  it together.  And if you look at the agreement it's not like

16  it's been going through drafts back and forth, back and

17  forth, back and forth.  It was the consummation of this

18  mediation and it's in a very succinct format.  It seems clear

19  that it's just a covenant as to those two patents.

20          It is the plaintiffs who were contending that it's

21  ambiguous and it should extend to other patents that weren't

22  mentioned in that covenant.  So the plaintiff here is

23  injecting the ambiguity, and we are simply rebutting that

24  accusation of ambiguity because we believe the covenant is

25  clear on its face.  It mentions two patents, no other

1    patents.  It doesn't mention about continuations that

2    plaintiff was aware of before and during that mediation.  And

3    so we are not simply saying it's vague, we are simply

4    rebutting the plaintiff's contention that the covenant

5    extends beyond what it says on its face.  And what it says

6    should be implied from what is on its face.

7         Your Honor, as far as the ownership of the '109

8    patent, I.C. Medical owned the continuation application at

9    the time of the signing the covenant not to sue that later

10   issued as '109 patent.  I personally don't know that

11   information, but I would have considerable confidence that

12   I.C. Medical did own that continuation application later

13   issued as the '109 patent at the time.

14         I think that's all of the questions you asked, Your

15   Honor.  If there is anything else you want us to answer.

16         THE COURT:  Thank you.

17         MR. NOCILLY:  Good morning, Your Honor.

18         THE COURT:  Good morning.

19         MR. NOCILLY:  Can you hear me okay?

20         THE COURT:  I can hear you fine.

21         MR. NOCILLY:  Okay.  I.C. Medical made a promise.

22   They made a promise that it wouldn't sue a certain of

23   products for infringement, that would be the GoldVac.  With

24   respect to the question Your Honor asked about the product,

25   and as the patentee has conceded the products for all intents

1   and purposes are the same.  I won't represent that there has

2   been some manufacturing changes that may result in some

3   dimensional or color or that types of things.  But for the

4   purposes of the infringement claim and the relevant elements

5   and the way they be analyzed, it's the same product.

6          I.C. Medical's gone back on its word.  Sent a

7   series of cease and desist letters, it's accused of

8   infringement after it made that promise to ConMed, a New York

9   resident, domiciled in Utica, 800 employees or so nationwide.

10  It's broken that promise.  And now it's here saying it's

11  unfair to have to come to court to New York after it's broken

12  that promise.

13         Our principal basis for jurisdiction is the

14  transacting business standard under New York law and statute.

15  As we indicated in our brief, the traditional test is the

16  *Sunward* factors, the number of factors, none of which are

17  determinative.  But what's important is this agreement that

18  was put in place between the two parties, and that's the

19  covenant not to sue.  And as we explained, the Supreme Court

20  and the Federal Circuit have agreed and understood that a

21  covenant not to sue is essentially a license.  It's a license

22  for that product.  It's an ongoing license.  It's a license

23  that protects that product from being sold.  It's a license

24  that protects that product when it's used or resold by a

25  distributor.  And it's a license that protects that product

1    from infringement when it's used by the end user.  There is

2    ongoing obligations in this relationship.

3            The covenant not to sue also requires notification

4    with respect to other claims of infringement between the two

5    parties.  Not the product, it says the parties.  It also has

6    a waiting period for a declaratory judgment action.  So both

7    parties knew that there was a possibility that a declaratory

8    judgment action could be filed.  Where else would ConMed file

9    a declaratory judgment action?  Are they going to go to

10   Arizona?  No.  They're going to come right here to New York.

11           Additionally, in the covenant not to sue there is

12   obligations that ConMed pay mediator fees.  So the covenant

13   required a New York resident to pay costs associated with

14   that settlement.  So we have, although it's terse and short,

15   a comprehensive agreement that grants a covenant not to sue

16   for that product and has additional obligations between both

17   parties living in Arizona and here residing in New York.

18           THE COURT:  How would you address counsel's

19   argument that it was executed in Arizona, everything occurred

20   in Arizona, there is no contact with New York with regard to

21   that agreement?

22           MR. NOCILLY:  That is correct with the negotiation

23   and conclusion of the agreement itself.  And we see that

24   those factors considered under the *Sunward* test when those

25   are the New York jurisdictional contacts are that negotiation

1    and contract because there is no other contacts with

2    New York.  But here we have the transaction of business

3    through licensing of a New York company.  I would submit,

4    Your Honor, that under the *Sunward* factors this ongoing

5    relationship between the two parties and the other payments

6    and obligations are two of the four factors.  And what the

7    cases say that apply those, particularly in New York, is that

8    when you have a licensor/licensee relationship, that's good

9    enough.  And that's what we saw with two cases that we cited

10   in our brief that involved ASCAP licenses and BMI licenses.

11   In fact, those were third party licenses.  And that was

12   sufficient to confer jurisdiction under the transaction

13   business standard.  In this case we've got a license that's a

14   transaction directly with the New York resident who is now

15   the one that is the plaintiff in the action.

16            The second part of that jurisdictional inquiry is

17   do the causes of action arise out of those contacts, that is

18   that covenant not to sue.  In response to your question, Your

19   Honor, before with respect to amending the complaint,

20   absolutely would we move for leave to amend the complaint.

21   The only defect in this case for jurisdiction was our failure

22   to articulate our legal theory of non-infringement which

23   would be legal estoppel of the supplied license that arises

24   with respect to the covenant not to sue.

25            I know Congress is trying to change the patent laws

1    right now and they would like to make pleading in patent

2    cases have a heightened standard similar to fraud, but the

3    fact remains that it isn't a heightened standard right now.

4    We have a license.  One of our legal theories will of course

5    be the legal estoppel that arises from this covenant not to

6    sue.  We may also have legal theories based on the absence of

7    one of the required elements of the claims not being present

8    in the devices.  Well, we haven't specified which ones we

9    think are absent but that's not really where it belongs.

10           If this Court would find that that's the case,

11   then, yes, we would respectfully request leave to amend the

12   complaint to fervently articulate the covenant not sue as a

13   legal theory of non-infringement based on estoppel.  And I

14   believe that satisfied both the *Sunward* test for personal

15   jurisdiction under the transacting business standard.

16           As we all know the New York Long Arm statute does

17   not encompass as much jurisdiction as is available under

18   federal due process, so it's almost inferred that if it's

19   fair under the New York Long Arm statute, that it should be

20   fair under federal due process standard.  But the Federal

21   Circuit has some very specific requirements with respect to

22   jurisdiction when we have a patentee that sends cease and

23   desist letters to a resident of the forum where the lawsuit

24   has been filed and impacted a declaratory judgment action.

25   And what the Federal Circuit says is you have to have

1    something beyond just a cease and desist letter.  We have

2    that here.  We have a license between the two parties.  And

3    there have been Federal Circuit cases where licenses that

4    were already terminated, like the *Inamed* case, were held to

5    be sufficient when we have this licensing history between the

6    two parties, and then we have a claim of infringement that's

7    been raised after the license.  In this case not only was

8    there a licensing relationship between the parties, that

9    license is the very defense to the infringement allegations

10   that have been made by the patentee.  So as a result I think

11   it would be very clear that both under the Federal Circuit

12   standard and New York Long Arm statute that jurisdiction is

13   proper.

14           Now Your Honor had asked about ownership of the

15   patents.  And the way the law worked at the time these

16   patents were filed was that the inventor is the putative

17   owner of the patent when it's filed.  And that would have

18   been Ioan Cosmescu, one of the co-declaratory judgment

19   defendants in this case.  The inventor can assign his rights

20   to a company.  And we assume that has taken place.  It's not

21   apparent on the face of the patent, but at some point in time

22   either one of the two defendants in this case have been the

23   owner of the patent and are still the owner of the patent or

24   else they wouldn't be able to make the infringement

25   allegations that they've made.

1          And last, Your Honor, I would point out that, you

2     know, the use of parol evidence to try to vary the clear

3     terms of this covenant not to sue would be improper and,

4     frankly, is a matter for summary judgment.  Should the

5     patentee decide to defend against the non-infringement legal

6     theory of legal estoppel based on that covenant, then they're

7     free to try to introduce parol evidence to vary the language

8     of that covenant not to sue.  But that's not really a matter

9     for a motion to dismiss under the Rule 12(b) standard.

10         I would point out, however, that the language is

11    very clear in that it promises that the GoldVac product will

12    not be sued for infringement.  And the very same language in

13    two cases of the Federal Circuit has been held to be

14    sufficient to cover related patents.  And the theory there is

15    that when you settle a case and you tell a party that their

16    product is clear from infringement, that you then can't go

17    back on your word.  And it doesn't matter if you get more

18    patents, particularly if they cover the same subject matter.

19    If we had changed our product and there were material

20    alterations, then no, the covenant not to sue wouldn't apply.

21    But the Federal Circuit has been very clear on two occasions

22    that once you promise that a specific product is clear from

23    infringement, it doesn't matter how many more patents you may

24    get that cover that same product.  Once you made that

25    promise, you can't take it back.  Thank you.

1          THE COURT:  Thank you.

2          MR. PURCELL:  Your Honor, may I have a brief reply?

3          THE COURT:  You may.

4          MR. PURCELL:  Thank you.

5          THE COURT:  Very brief and then I'll give counsel

6   another opportunity.  Go ahead.

7          MR. PURCELL:  I think it's a mischaracterization to

8   say that the covenant was a license to a product.  And there

9   is very easy language to say that if that was what was

10  intended.  You say words to the effect that to the extent

11  that I.C. Medical now owns or hereinafter owns any patents of

12  any nature whatsoever, U.S. and foreign, anywhere, or owns

13  applications which later issue as a patent anywhere that

14  might cover the GoldVac product, to that extent the GoldVac

15  product is licensed.  It's easy.  This is not a covenant

16  where two non-attorneys without legal representation, you

17  know, sort of informally agreed to something trying to figure

18  out what was on our minds.  There were attorneys at this

19  mediation.  There were attorneys who negotiated this

20  covenant.  And if that was the true intent that there is a

21  license as to a product, that could have been easily stated

22  and should have been stated in a much, much different manner.

23          In fact, we indicated that the same parties in yet

24  an earlier filed patent infringement lawsuit settled that in

25  a much more elaborate settlement agreement that did include

1    something called a license and it was a license to

2    continuation applications and patents that might issue from

3    that.  So the parties themselves in their own previous

4    dealings were well aware of how to structure that sort of

5    deal if that was in fact what was intended in negotiating

6    consummating the covenant.  That was not done.  Thank you,

7    Your Honor.

8            THE COURT:  Thank you.  Counsel, any response?

9            MR. NOCILLY:  Your Honor, I won't belabor the

10   issue.  The language is plain.  The Federal Circuit has ruled

11   on nearly identical language and we believe that parol

12   evidence is inappropriate at this stage of the matter to try

13   to vary the terms of the agreement.

14           THE COURT:  Okay.  I'm going to just step off the

15   bench for a minute and take just a brief moment with my law

16   clerk and I'll be right back out.

17           (Short recess.)

18           THE COURT:  I thank you for traveling to the Court

19   today.  I appreciate your arguments.  It's been helpful to

20   the Court.  I think it's appropriate to be expeditious in

21   this matter for a number of reasons.  I'm going to deny the

22   motion to dismiss today.  I think a lot of the arguments that

23   the defendants want to address can be revisited in a summary

24   judgment motion should we get to that point.  And I also

25   think it's appropriate to be expeditious so that if there

1    should be any appeal, that that can be taken forthwith.

2         So I'm going to deny the motion to dismiss.  A

3    short order will be issued so that you can take whatever

4    action you deem is appropriate based on that order.  And

5    thank you again.

6         MR. PURCELL:  Your Honor, I have one more request.

7    In view of denial of the motion, would this Court entertain

8    certifying this an interlocutory proceeding for purposes of

9    appeal under 28 U.S.C. 1292?

10        THE COURT:  I think it best if you submit something

11   in writing and so that they can give a response and it can be

12   addressed and we'll address it.  Okay?

13        MR. PURCELL:  Yes.

14        THE COURT:  Thank you.

15        THE CLERK:  Court is adjourned.

16              *              *              *

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

       I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.


_____

EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter